IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| AUTOZONE, INC., | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE GLIDDEN COMPANY, d/b/a ICI PAINTS, | ) ) | |
| | ) | |
|     Defendant. | ) | No. 08-2851 |
| | ) | |
| and | ) | |
| | ) | |
| THE GLIDDEN COMPANY d/b/a ICI PAINTS, | ) ) | |
| | ) | |
|     Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BASF Construction Chemicals, LLC, | ) | |
| | ) | |
|     Third-Party Defendant, | ) | |
| | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AUTOZONE, INC., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BASF Construction Chemicals, LLC, | ) | |
| | ) | |
|     Defendant. | | |

ORDER GRANTING IN PART AND DENYING IN PART THIRD-PARTY DEFENDANT
BASF CONSTRUCTION CHEMICALS' MOTION TO DISMISS, AND GRANTING IN
PART AND DENYING IN PART THIRD-PARTY PLAINTIFF THE GLIDDEN
COMPANY'S MOTION TO AMEND

Before the Court is Third-Party Defendant BASF Construction Chemicals, LLC's ("BASF") September 1, 2009 Motion to Dismiss Third-Party Plaintiff The Glidden Company d/b/a ICI Paints' ("Akzo Nobel") Third-Party Complaint alleging causes of action for indemnification, contribution, breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness, and negligence. (D.E. 56.)  On October 15, 2009, Akzo Nobel responded in opposition to BASF's Motion to Dismiss (D.E. 65), and on October 27, 2009, BASF filed a reply (D.E. 69).

Also before the Court is Akzo Nobel's March 31, 2010 Motion for Leave to Amend its Third-Party Complaint. (D.E. 90.)  BASF responded in opposition on April 9, 2010, arguing that amendment would be futile (D.E. 91).

Taking all facts alleged by Akzo Nobel as true, amending its Third-Party Complaint to elaborate its causes of action for indemnification, breach of express warranty, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness would not be futile.  Thus, the Court GRANTS Akzo Nobel's Motion to Amend to the extent the Amended Third-Party Complaint addresses those causes of action and DENIES AS MOOT BASF's Motion to Dismiss those causes of action in Akzo Nobel's original Third-Party Complaint.  Amending Akzo Nobel's Third-Party Complaint to elaborate its causes of action

for contribution and negligence would be futile.  Therefore, the Court DENIES Akzo Nobel's Motion to Amend to the extent the Amended Third-Party Complaint would address those causes of action and GRANTS BASF's Motion to Dismiss those causes of action in Akzo Nobel's original Third-Party Complaint.

## I.   Factual Background

This dispute concerns the failure of exterior paint on potentially hundreds of AutoZone, Inc. ("AutoZone") retail automotive parts stores.  (Memorandum in Opposition to Third-Party Defendant BASF Construction Chemicals, LLC's Motion to Dismiss Third-Party Complaint, D.E. 65, at 2.) ("Akzo Nobel Mem. in Opp'n")  In 2005, AutoZone began a new store construction program.  (Amended Third-Party Complaint Against BASF Construction Chemicals, LLC, D.E. 90-1, ¶ 8.) ("Am. Third-Party Compl.")  As part of that program, Akzo Nobel supplied exterior paints to meet AutoZone's specifications.  (See id. ¶ 9.)  One specification required Akzo Nobel to obtain products from Degussa Construction Chemicals, Inc. ("Degussa"), which was a subsidiary of Degussa Corporation and which ultimately became BASF.  (See id. ¶¶ 2-3, 9.)  The products obtained included Thoro 35, Sonneborn Gray, SCC Smooth UD BS 5G, Blockfiller 749, Thoro Blockfiller, ThoroCoat, ThoroGuard, and ThoroSheen ("Degussa Products").  (Id. ¶ 9.)  Together, they constitute

approximately 85% of each AutoZone store's exterior paint and are applied to hundreds of AutoZone stores. (See id. ¶¶ 10-11.)

AutoZone also contracted with Akzo Nobel to manufacture AutoZone Orange paint for use as a stripe on each store's exterior. (Id. ¶ 13-14.) Between 2006 and March 2008, Akzo Nobel purchased the orange pigment used to manufacture that paint from BASF. (Id. ¶ 15.) The resulting paint was applied to newly constructed and repainted AutoZone stores. (Id.)

The paint AutoZone purchased developed problems. (See id. ¶¶ 12, 16.) Once applied, it cracked, peeled, and faded. (See id.) In part because of those problems, AutoZone sued Akzo Nobel, alleging breach of contract. (Amended Complaint for Breach of Contract and, if Appropriate, Other Relief, D.E. 45, ¶ 11.) ("AutoZone's Compl.") AutoZone alleges that Akzo Nobel breached express warranties that "all material delivered shall be free of defects for a period of five (5) years from completion and/or date delivery [sic] of all goods . . . ." (Id.) AutoZone seeks, inter alia, the cost of curing warranty defects currently known and the cost it is reasonably certain to incur in the future. (Id. at 7.)

Akzo Nobel filed an Answer and a Third-Party Complaint against BASF. Akzo Nobel seeks indemnity and contribution to the extent Akzo Nobel is found liable to AutoZone, and recovery for breach of express warranty, the implied warranty of

4

merchantability, the implied warranty of fitness for a particular purpose, and negligence. (Am. Third-Party Compl. ¶¶ 18, 24, 27.)

AutoZone then sued BASF directly, alleging breach of contract and seeking compensatory damages. (Amended Complaint for Breach of Contract, D.E. 60-1, at 5.) BASF, in its Answer, admits that it and/or Degussa had issued certain warranties directly to AutoZone for products applied to AutoZone stores, and that Degussa occasionally supplied products to Akzo Nobel that may have been used on AutoZone stores. (Defendant BASF Construction Chemicals, LLC's Answer to Plaintiff's Amended Complaint, D.E. 61, ¶¶ 7-8.) ("BASF's Answer") The Court granted AutoZone's Motion to Consolidate its action against BASF with the original disputes between AutoZone and Akzo Nobel, and Akzo Nobel and BASF. (Order Consolidating Cases, D.E. 66, at 2.)

Akzo Nobel filed a Motion for Leave to Amend its Complaint on March 31, 2010. (Motion and Memorandum of Defendant and Third-Party Plaintiff Akzo Nobel Paints LLC, Formerly Known as The Glidden Company D/B/A/ ICI Paints for Leave to Amend Complaint, D.E. 90.) ("Mot. to Amend")

## II. Jurisdiction and Choice of Law

Plaintiff AutoZone is a Nevada corporation with its principal place of business in Memphis, Tennessee. (AutoZone's

5

Compl. ¶ 1.)  Defendant and Third-Party Plaintiff Akzo Nobel is a Delaware corporation with its principal place of business in Strongsville, Ohio.  (Am. Third-Party Compl. ¶ 1.)  Defendant and Third-Party Defendant BASF is a Delaware corporation with its principal place of business in Beachwood, Ohio.  (BASF's Answer ¶ 2.)

Complete diversity exists between AutoZone and Akzo Nobel and between AutoZone and BASF.  See V & M Star, LP v. Centimark Corp., 596 F.3d 354, 355 (6th Cir. 2010) (citing Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005)).  The amount in controversy exceeds $75,000.  (See AutoZone's Compl. ¶ 17.) Therefore, the Court has diversity jurisdiction under 28 U.S.C. § 1332.  Medlen v. Estate of Meyers, 273 F. App'x 464, 469 (6th Cir. 2008) (citing Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978)).  The Court has supplemental jurisdiction over Akzo Nobel's Third-Party Complaint against BASF.  See Grimes v. Mazda N. Am. Operations, 355 F.3d 566, 572 (6th Cir. 2004).

In a diversity action, the Court applies the choice of law rules of the forum state.  See Morell v. Star Taxi, 343 F. App'x 54, 57 (6th Cir. 2009).  Here, the parties have not discussed where any contract was made or any allegedly tortious conduct occurred.  They agree in their respective motions and memoranda that Tennessee substantive law applies.  "Because the parties

6

agree to the particular state law application, the court will apply Tennessee law and will not conduct a choice of law analysis sua sponte." Americoach Tours, Inc. v. Detroit Diesel Corp., No. 04-2016 B/V, 2005 WL 2335369, at *1 (W.D. Tenn. Sept. 23, 2005) (citations omitted); see In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("Unlike jurisdictional issues, courts need not address choice of law questions sua sponte."). Therefore, the Court will apply Tennessee substantive law.

### III. Standard of Review

"Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given when justice so requires." Riverview Health Inst. LLC v. Med. Mut. of Ohio, 601 F.3d 505, 520 (6th Cir. 2010). However, when a proposed amendment would be futile because the cause of action cannot withstand a Rule 12(b)(6) motion to dismiss, courts may deny a motion to amend to assert or support that cause of action. See id.

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss an action when a complaint fails to state a claim upon which relief can be granted. Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 562 (6th Cir. 2003). In deciding whether to grant a motion to dismiss for failure to state a claim, the Court must construe the complaint in the light most favorable to the plaintiff, accept as true all factual allegations in the

complaint, and draw all reasonable inferences in the plaintiff's favor, but "need not accept as true legal conclusions or unwarranted factual inferences." DirecTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (quoting Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000)); see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  The Court need not "accept as true a legal conclusion couched as a factual allegation." See Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The factual allegations assumed to be true must raise a party's right to relief above the speculative level. Twombly, 550 U.S. at 555-56 (citations omitted).  Although they need not be detailed or demonstrate a probability of misconduct, they must include sufficient factual matter to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  To state a plausible claim, the plaintiff must plead sufficient factual content for the Court reasonably to infer that the defendant is liable. Id. (citing Twombly, 550 U.S. at 556).  To meet this burden, plaintiff's "complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." League of United

Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citing Twombly, 550 U.S. at 562).

The factual record that the Court may consult in ruling on a motion to dismiss under Rule 12(b)(6) is generally limited to the facts in the complaint and exhibits attached to it. Passa v. City of Columbus, 123 F. App'x 694, 697 (6th Cir. 2005) (citing Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001)). However, the Court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Appropriate subjects of judicial notice include matters of public record, orders, and items appearing in the case record, see Doe v. SexSearch.com, 551 F.3d 412, 416 (6th Cir. 2008) (quoting Amini, 259 F.3d at 502), as well as other court proceedings, Buck v. Thomas M. Cooley Law Sch., 597 F.3d 812, 816 (6th Cir. 2010) (citation omitted). The appropriate subjects of judicial notice in ruling on motions to dismiss are facts that are not subject to reasonable dispute. See Passa, 123 F. App'x at 697. Thus, when the party moving to dismiss a cause of action makes relevant admissions that appear in the case record, the Court may consider those admissions in deciding whether to grant the motion to dismiss. For example, the Court may consider BASF's admissions in its Answer to AutoZone's Complaint, which has been

9

consolidated with this case.   (Order Consolidating Cases, D.E. 66, at 2.)

## IV.  Analysis

Akzo Nobel's Motion to Amend seeks to update the factual allegations of the Third-Party Complaint by adding additional information learned during discovery.  (Mot. to Amend at 2.)  In response, BASF asserts that the Court should deny the Motion because the Amended Third-Party Complaint cannot withstand a motion to dismiss and, thus, the proposed amendment would be futile.   (Third Party Defendant BASF Construction Chemicals, LLC's Memorandum in Opposition to Third Party Plaintiff's Motion for Leave to Amend the Third Party Complaint, D.E. 91.)

In its September 1 Motion to Dismiss, BASF asserts that the original Third-Party Complaint fails to state a claim on which relief can be granted for indemnification, contribution, breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness, and negligence. (Third Party Defendant BASF Construction Chemicals, LLC's Motion to Dismiss the Third Party Complaint, D.E. 56.) ("BASF's Motion to Dismiss")  Specifically, BASF asserts that (1) the contribution claim fails to state a claim on which relief can be granted because Akzo Nobel has not been sued in tort; (2) Akzo Nobel has failed to plead the necessary elements for a breach of express warranty claim; (3) Akzo Nobel has

failed to allege or plead the necessary elements for a negligence claim; (4) Akzo Nobel's negligence claim should be dismissed because Akzo Nobel seeks recovery for purely economic losses; and (5) all of the allegations contained in the Third-Party Complaint are conclusory. (Id.; Third Party Defendant BASF Construction Chemicals, LLC's Memorandum of Law in Support of its Motion to Dismiss the Third Party Complaint, D.E. 57).

In response, Akzo Nobel argues that (1) the Third-Party Complaint sets forth specific facts providing BASF with fair notice of Akzo Nobel's claims and their grounds; (2) BASF's Motion to Dismiss should be denied because Akzo Nobel has not had an opportunity to obtain key discovery to support its claims; (3) Akzo Nobel's contribution cause of action states a claim as a matter of law because Akzo Nobel and BASF remain potentially liable in tort; and (4) if the Court finds Akzo Nobel's Third-Party Complaint deficient in any manner, Akzo Nobel should be granted leave to amend to assert additional facts learned through discovery. (Akzo Nobel Mem. in Opp'n.)

The Court must first determine, as to each cause of action, whether amendment would be futile. If not, the Motion to Amend should be granted, and BASF's Motion to Dismiss the pertinent cause of action denied as moot. If so, the Motion to Amend should be denied, and the pertinent cause of action in the

11

original Third-Party Complaint cannot survive BASF's Motion to Dismiss.

### A.    Indemnification Claim

In Tennessee, "indemnification requires the complete shifting of liability for loss from one party to another" and rests on two principles: persons should be responsible for their own wrongdoing and wrongdoers should be liable to persons required to pay damages that the wrongdoers should have paid. Winter v. Smith, 914 S.W.2d 527, 541 (Tenn. Ct. App. 1995) (citations omitted); see Owens v. Truckstops of Am., 915 S.W.2d 420, 433 (Tenn. 1996).  When a third party's wrongful conduct causes a defendant to be liable to a plaintiff, the defendant is entitled to indemnification from the third party.  See Houseboating Corp. of Am. v. Marshall, 553 S.W.2d 588, 589 (Tenn. 1977) ("The right to indemnity rests upon the principle that everyone is responsible for the consequences of his own wrong, and if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable to the former.") (quoting S. Coal & Coke Co. v. Beach Grove Mining Co., 381 S.W.2d 299, 302 (Tenn. Ct. App. 1963)).

Under Tennessee law, an obligation to indemnify may arise expressly by contract between the parties or impliedly from the parties' relationship.  Id. (citations omitted); Farmers Mut. of Tenn. v. Athens Ins. Agency, 145 S.W.3d 566, 568 (Tenn. Ct. App.

2004); Winter, 914 S.W.2d at 541-42.  For indemnification to arise expressly by contract, "there must be a clear and unequivocal expression of an intention to indemnify." First Am. Bank of Nashville, N.A. v. Woods, 734 S.W.2d 622, 632 (Tenn. Ct. App. 1987) (citations omitted).  "Courts will impose an implied obligation to indemnify when the obligation is a necessary element of the parties' relationship, or when justice and fairness demand that the burden of paying for the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties." Winter, 914 S.W.2d at 542 (citations omitted).  "In the absence of an express contract, an obligation to indemnify will be implied only if the party from who [sic] indemnification is sought breached a contract or engaged in some other related tortious conduct." Id. (citations omitted).

Here, BASF asserts that Akzo Nobel's proposed amended indemnification claim would be futile because it fails to state a claim on which relief may be granted.  In particular, BASF argues that Akzo Nobel alleges no facts to support an indemnification claim against BASF for any liability resulting from AutoZone's lawsuit.

Assuming the factual allegations alleged in Akzo Nobel's proposed Amended Third-Party Complaint are true, it states a plausible claim for indemnification.  The Court must construe

the Complaint in the light most favorable to the Third-Party Plaintiff and draw all reasonable inferences in its favor.  See DirecTV, Inc., 487 F.3d at 476.  Akzo Nobel does not allege any facts tending to show that BASF or Degussa expressly promised to indemnify Akzo Nobel if the products they supplied for use on AutoZone stores proved deficient.  However, Akzo Nobel does allege facts tending to show that BASF could plausibly be required to indemnify Akzo Nobel for that deficiency.

The facts underlying Akzo Nobel's claim for indemnification are simple: BASF and Degussa, a corporation later sold to BASF, provided products to Akzo Nobel for use in painting AutoZone stores, and problems developed in the paint applied to those stores.  (See Am. Third-Party Compl. ¶¶ 7-16.)  BASF admits supplying products to Akzo Nobel that may have been used on AutoZone stores.  (BASF's Answer ¶ 8.)  Because similar problems developed with the paint — cracking, peeling, and fading — at different AutoZone stores in different climates,[1] it is plausible to infer that those problems arose because the paint products were defective.  It is thus plausible to conclude that BASF is responsible, or shares responsibility, for the problems that occurred and that Akzo Nobel was not solely at fault.

---

[1] Exhibit A to Akzo Nobel's proposed Amended Third-Party Complaint states that Degussa Products were applied to AutoZone stores in different states with different climates, such as Florida, Nebraska, New Mexico, New York, and Ohio.  (Am. Third-Party Compl. at 8-10.)  The similarity of problems in different climates suggests that they arose from defects in the paint products rather than their application.

Under Tennessee law, Akzo Nobel states a plausible claim for indemnification that arises impliedly from its relationship to BASF.   Because Tennessee bases indemnification "upon the principle that everyone is responsible for the consequences of his own wrong, and if another person has been compelled to pay damages which the wrongdoer should have paid, the latter becomes liable to the former," Houseboating Corp. of Am., 553 S.W.2d at 589, BASF may be required to pay for the consequences of any wrongdoing for which it or Degussa may be responsible.   "Justice and fairness" may demand that BASF indemnify Akzo Nobel for any liability Akzo Nobel incurs based on BASF's wrongdoing because of their qualitatively different degrees of fault.   See Winter, 914 S.W.2d at 542.

In an analogous case, the Supreme Court of Tennessee held that, when a customer successfully sued a distributor for rescission of a contract for sale of a houseboat because of manufacturing defects in the houseboat, the distributor was entitled to indemnification from the manufacturer.   See Houseboating Corp. of Am., 553 S.W.2d at 588-89.   The Supreme Court of Tennessee has also held that, when a train derailment occurred and a railroad car manufacturer was sued, the railroad car manufacturer stated a valid cause of action against the manufacturer of the wheels on the train for indemnification for attorneys' fees and other litigation expenses in defending

15

against the lawsuit.  _See_ _Pullman Standard, Inc. v. Abex Corp._, 693 S.W.2d 336, 337-40 (Tenn. 1985).

Although AutoZone alleges only breach of contract by Akzo Nobel, it would be plausible to conclude that BASF has an implied obligation to Akzo Nobel and that Akzo Nobel would be entitled to indemnification from BASF based on their comparative degrees of fault.  Akzo Nobel's proposed Amended Third-Party Complaint includes sufficient factual matter to "state a claim to relief that is plausible on its face."  _See_ _Iqbal_, 129 S. Ct. at 1949 (quoting _Twombly_, 550 U.S. at 570).  Amendment would not be futile.  Therefore, Akzo Nobel's Motion to Amend its indemnification claim is GRANTED.  BASF's Motion to Dismiss the original Third-Party Complaint's indemnification claim is DENIED AS MOOT.

### B.  Contribution Claim

The Supreme Court of Tennessee has held that a party has the right to contribution in three limited circumstances: (1) when, in a case under _McIntyre v. Balentine_, 833 S.W.2d 52 (Tenn. 1992), the cause of action arose, the suit was filed, and the parties made irrevocable litigation decisions based on pre-_McIntyre_ law; (2) cases in which "joint and several liability continues to apply under doctrines such as the family purpose doctrine, . . . tortfeasors act in concert or collectively with one another, . . . the doctrine of respondeat

superior permits vicarious liability due to an agency-type relationship," or "appropriate" products liability cases; or (3) in the "appropriate case" when "fairness demands," which applies "only when failure to allow contribution would impose an injustice." Gen. Elec. Co. v. Process Control Co., 969 S.W.2d 914, 916 (Tenn. 1998) (citations omitted).

The first circumstance does not apply because this case arises out of problems with products supplied to AutoZone after 2005. The Tennessee Supreme Court has emphasized that the third circumstance is not a broad "catch-all" provision defeating "the fundamental concepts of our comparative fault law," id., and has applied it only when the underlying claim against the party seeking contribution sounds in tort, see id. (negligence and strict liability); Owens, 915 S.W.2d at 430 (negligence); Bervoets v. Harde Ralls Pontiac-Olds, Inc., 891 S.W.2d 905, 906 (Tenn. 1994) (negligence). The reference to "comparative fault," which generally "means those principles governing the analysis of liability in tort actions," Manis v. Gibson, No. E2005-00007-COA-R3-CV, 2006 WL 521466, at *4 n.1 (Tenn. Ct. App. Mar. 3, 2006) (emphasis added), suggests that the third circumstance is inapplicable when the underlying claim for which a party seeks contribution is not a tort. Under Tennessee law, breach of contract is not a tort. See Burris v. Hosp. Corp. of Am., 773 S.W.2d 932, 935 (Tenn. Ct. App. 1989). Here, AutoZone

17

has sued Akzo Nobel for breach of contract.  (AutoZone's Compl. at 1, 7.)  Therefore, the third circumstance is inapplicable.

The second circumstance is inapplicable because it refers only to contribution claims where the underlying suit is in tort.  Under Tennessee law, "a statutory 'right of contribution exists only in favor of a tort-feasor who has paid more than the proportionate share of the shared liability between two (2) or more tort-feasors for the same injury . . . .'"  Williams Holding Co. v. Willis, 166 S.W.3d 707, 712 (Tenn. 2005) (quoting Tenn. Code Ann. § 29-11-102(b)) (emphasis in original). Tennessee's Uniform Contribution Among Tort-Feasors Act provides that, "where two (2) or more persons are jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right to contribution among them even though judgment has not been recovered against all or any of them."  Tenn. Code Ann. § 29-11-102(a) (emphasis added). Thus, if two or more persons are not "liable in tort" for the same wrong, there is no right of contribution.  Cf. Messer Griesheim Indus. v. Cryotech of Kingsport, Inc., 45 S.W.3d 588 (Tenn. Ct. App. 2001) (citing Tenn. Code. Ann. § 29-11-102) ("The right of contribution exists where two or more persons are liable in tort for the same wrong.").

Akzo Nobel argues that "liable in tort" means "potentially liable in tort" and is broad enough to include liability for

18

breach of contract where the underlying complaint seeks recovery for "breach of contract and, if appropriate, other relief" and that there is nothing to prevent the Plaintiff from amending the Complaint to include tort claims. (Akzo Nobel Mem. in Opp'n at 8.)

First, Akzo Nobel's contention is inconsistent with the clear language of § 29-11-102. The Court must interpret Tennessee's statutes as a Tennessee court would. Menorah Ins. Co. Ltd. v. W.F. Whelan Co., 110 F. App'x 524, 526 (6th Cir. 2004) (citations omitted). Under Tennessee law, when a statute's language is clear and unambiguous, a court "must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004); see also In re Sidney J., 313 S.W.3d 772, 774 (Tenn. 2010) ("When a statute is clear, we apply the plain meaning without complicating the task.") (citing Johnson, 151 S.W.3d at 507). Here, "liable in tort" has a plain meaning. If Akzo Nobel's contention were correct, almost any breach of contract case would provide grounds for contribution, significantly expanding the right to contribution under Tennessee law.

Even if one concludes that "liable in tort" is ambiguous, the other tools of statutory interpretation suggest that Akzo

Nobel is incorrect. When a statute is ambiguous, a Tennessee court "must look to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose" by construing the statute in its entirety and assuming the legislature had a meaning and purpose behind each word. Johnson, 151 S.W.3d at 507 (citations omitted). The purpose of Tennessee's Uniform Contribution Among Tort-Feasors Act is "to establish a right of contribution where two or more persons are jointly or severally liable in tort." Wolff & Munier, Inc. v. Price-Waterhouse, 811 S.W.2d 532, 536 (Tenn. Ct. App. 1991) (quoting Buckner v. Cocke County, 720 S.W.2d 472, 473 (Tenn. Ct. App. 1986)) (emphasis added). Not only is the statute named the Uniform Contribution Among Tort-Feasors Act, taken as a whole it refers frequently to tort-feasors, injury, and wrongful death. See Tenn. Code Ann. §§ 29-11-101 to -106. No Tennessee court has allowed and no Tennessee court would allow a contribution claim under the statute where the only underlying cause of action is for breach of contract.

Second, Tennessee courts have repeatedly distinguished contractual and tort liability. See Weaver v. McCarter, No. W2004-02803-COA-R3-CV, 2006 WL 1529506, at *13 (Tenn. Ct. App. June 6, 2006) ("[T]his Court's research indicates that liability under tort is separate and distinct from liability under breach of contract and, thus, and [sic] any judgment for breach of

contract should be against the party guilty of the breach."); Burris, 773 S.W.2d at 935 ("Since a tort is defined as a civil wrong independent of contract, it may be accurately stated that all civil wrongs are either contractual or tortious. . . . Any ground which a plaintiff might state for recovery of civil damages must fall into one of the categories, contract or tort."); cf. Hannan v. Alltel Publ'g Co., 270 S.W.3d 1, 10 n.11 (Tenn. 2008) (noting that "we have never recognized a tort of 'negligent breach of contract'").  Tennessee courts have not read "liable in tort" to include breach of contract actions where a defendant may be "potentially liable in tort."  See First Am. Title Ins. Co. v. Cumberland County Bank, 633 F. Supp. 2d 566, 576 (M.D. Tenn. 2009) (implying that there can be no right of contribution under Tennessee law where the underlying claim is for breach of contract).  To do so would require treating breach of contract claims as tort claims, ignoring the distinction Tennessee law draws between the two.

Third, most states have interpreted "in tort" to exclude contribution suits based on breach of contract.  See, e.g., Wagner-Meinert, Inc. v. EDA Controls Corp., No. 06-3777, 2007 WL 579668, at *3 (6th Cir. 2007) (applying Ohio law); Hartford Ins. Co. of the Midwest v. Phillip Ins. Agency Inc., No. 06-cv-00043-REB-MEH, 2007 WL 601974, at *2 (D. Colo. Feb. 22, 2007) (applying Colorado law); Unique Techs., Inc. v. Micro Stamping

Corp., No. CIV.A.02-CV-6649, 2003 WL 21652284, at *3 (E.D. Pa. Apr. 15, 2003) (applying Pennsylvania law); McConal Aviation, Inc. v. Commercial Aviation Ins. Co., 799 P.2d 133, 135-36 (N.M. 1990) (applying New Mexico law); County of Chautauqua v. Pacos Constr. Co., 600 N.Y.S.2d 585, 586 (App. Div. 1993) (applying New York law); Land v. Tall House Bldg. Co., 602 S.E.2d 1, 3 (N.C. Ct. App. 2004) (applying North Carolina law). Akzo Nobel correctly points out that some states have interpreted "in tort" to include potential liability in tort. See Tamashiro v. De Gama, 450 P.2d 998, 1000 (Haw. 1969) (applying Hawaii law); Joe & Dan Int'l Corp. v. U.S. Fid. & Guar. Co., 533 N.E.2d 912, 918 (Ill. App. Ct. 1988) (applying Illinois law). Nevertheless, as the United States Court of Appeals for the Seventh Circuit recently noted, only a minority of states follow that approach. See Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., 522 F.3d 776, 783 n.9 (7th Cir. 2008) (citations omitted).

Although the Tennessee Supreme Court has not addressed the precise issue, the statutory language of Tennessee's Uniform Contribution Among Tort-Feasors Act and an examination of Tennessee case law persuade the Court that it would follow the majority rule. Therefore, a contribution claim in Tennessee may not be based on an underlying breach of contract claim. See Stanek v. Greco, 323 F.3d 476, 478 (6th Cir. 2003) (quoting

<u>Ziegler v. IBP Hog Mkt., Inc.</u>, 249 F.3d 509, 517 (6th Cir. 2001)).

Because none of the circumstances in which Tennessee allows contribution claims applies, Akzo Nobel's proposed amendment to its contribution claim would be futile. Based on the same reasoning, the contribution claim in its original Third-Party Complaint must fail. (<u>See</u> Answer to Plaintiff's Amended Complaint, Counterclaim, and Third-Party Complaint, D.E. 47.) Therefore, Akzo Nobel's Motion to Amend its contribution claim is DENIED. BASF's Motion to Dismiss the contribution claim in Akzo Nobel's original Third-Party Complaint is GRANTED.

**C. Breach of Express Warranty Claim**

Under Tennessee law, a plaintiff establishes a prima facie claim for breach of express warranty when it proves three elements: "(1) Seller made an affirmation of fact intending to induce the buyer to purchase the goods; (2) Buyer was in fact induced by the seller's acts; and (3) The affirmation of fact was false regardless of the seller's knowledge of the falsity or intention to create a warranty." <u>Body Invest, LLC v. Cone Solvents, Inc.</u>, No. M2006-01723-COA-R3-CV, 2007 WL 2198230, at *7 (Tenn. Ct. App. July 26, 2007) (citations omitted); <u>see also</u> Tenn. Code Ann. § 47-2-313; <u>Coffey v. Dowley Mfg., Inc.</u>, 187 F. Supp. 2d 958, 969 (M.D. Tenn. 2002), <u>aff'd</u>, 89 F. App'x 927 (6th Cir. 2003).

23

Akzo Nobel's proposed Amended Third-Party Complaint alleges that "BASF made claims and written express warranties that the Degussa Products and BASF orange pigment would meet certain specifications" and "BASF breached its express warranties . . . [because Degussa's and BASF's products] were defective, not fit for their ordinary purposes, were unreliable, had not been adequately tested, were not weather and water tight, and permitted moisture intrusion that allowed and promoted failure of the exterior paint coating." (See Am. Third-Party Compl. ¶¶ 23-24.) Although not expressly stated, it is reasonable to infer that Akzo Nobel alleges BASF and Degussa made written promises in their contracts about the quality of their products. Because BASF and Degussa sold products to Akzo Nobel (Id. ¶¶ 9-15) and "BASF admits that it and/or Degussa issued certain limited warranties directly to AutoZone for products applied to certain AutoZone stores" (BASF's Answer ¶ 7), it is plausible to infer that BASF and Degussa made written express warranties to Akzo Nobel.

Therefore, Akzo Nobel's amendment of its claim for breach of express warranty would not be futile, and its Motion to Amend that claim is GRANTED.  BASF's Motion to Dismiss the original Third-Party Complaint's breach of express warranty claim is DENIED AS MOOT.

**D.   Breach of Implied Warranty of Merchantability Claim**

24

In Tennessee, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tenn. Code Ann. § 47-2-314(1). A "merchant" includes "a person who deals in goods of the kind . . . involved in the transaction." Id. § 47-2-104(1); see Gentry v. Hershey Co., 687 F. Supp. 2d 711, 722 (M.D. Tenn. 2010). Goods are only "merchantable" when, among other things, they "are fit for the ordinary purposes for which such goods are used." Id. § 47-2-314(2)(c). Establishing that goods are not fit for their ordinary purposes "requires only proof, in a general sense and as understood by a layman, that 'something was wrong' with the product." Browder v. Pettigrew, 541 S.W.2d 402, 406 (Tenn. 1976) (quoting Scanlon v. Gen. Motors Corp., Chevrolet Motor Div., 326 A.2d 673, 677 (N.J. 1974)); see also Body Invest, 2007 WL 2198230, at *8; cf. Patton v. McHone, 822 S.W.2d 608, 617 (Tenn. Ct. App. 1991) ("Whether a particular used car is merchantable—that is fit for the ordinary purpose for which cars are used—depends on the age, mileage, condition, and price of the car.") (citation omitted). "In order to recover under this warranty, the purchaser must show that the goods did not measure up to the requirements of the warranty at the time they were delivered." Dan Stern Homes, Inc. v. Designer Floors & Homes, Inc., No. M2008-00065-COA-R3-

25

CV, 2009 WL 1910955, at *4 (Tenn. Ct. App. June 30, 2009) (citation omitted).

Akzo Nobel's proposed Amended Third-Party Complaint contains factual allegations and legal conclusions addressing BASF's alleged breach of the implied warranty of merchantability. Akzo Nobel asserts that BASF breached the implied warranty of merchantability and that the products were "not fit for their ordinary purposes." (See Am. Third-Party Compl. ¶ 24.) Because these are legal conclusions, the Court need not accept them as true. See Iqbal, 129 S. Ct. at 1949-50 (citations omitted). However, Akzo Nobel does make factual allegations that the Court must assume to be true, including that Akzo Nobel purchased paint products from BASF and Degussa for use on the exterior of AutoZone stores and that problems developed with the paint once applied. (See Am. Third-Party Compl. ¶¶ 7-16.) BASF admits that Degussa supplied products to Akzo Nobel that may have been used on AutoZone stores. (BASF's Answer ¶ 8.)

Taking these factual allegations in the light most favorable to Akzo Nobel and drawing all reasonable inferences in its favor, Akzo Nobel states a plausible claim for breach of the implied warranty of merchantability. Reading the facts in the most favorable light, it is reasonable to infer that Akzo Nobel purchased products from BASF and Degussa that were defective and

caused the paint applied to AutoZone stores to crack, peel, and fade.  In this case, BASF and Degussa would be merchants because they sold paint products they manufactured.  <u>See</u> Tenn. Code Ann. § 47-2-104(1).  Because those products would not be fit for their ordinary purpose of covering the walls of buildings and because lay people would likely conclude that "something was wrong" with paint that quickly cracked, peeled, and faded, the paint products would not be merchantable.  <u>See</u> <u>id.</u> § 47-2-314(2)(c); <u>Browder</u>, 541 S.W.2d at 406.  Akzo Nobel could meet its burden of showing that the paint products did not measure up to the requirements of the warranty when they were delivered.  <u>See</u> <u>Dan Stern Homes</u>, 2009 WL 1910955, at *4.  Because Akzo Nobel would then meet all of the requirements for breach of the implied warranty of merchantability, it states a plausible claim for relief.

Therefore, Akzo Nobel's amendment of its claim for breach of the implied warranty of merchantability would not be futile.  Akzo Nobel's Motion to Amend that claim is GRANTED.  BASF's Motion to Dismiss the original Third-Party Complaint's breach of implied warranty of merchantability claim is DENIED AS MOOT.

**E. Breach of Implied Warranty of Fitness Claim**

In Tennessee, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the

27

seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." Tenn. Code Ann. § 47-2-315. To create a warranty of fitness for a particular purpose under Tennessee law, two elements must exist: (1) the seller must have reason to know the buyer's purpose, and (2) the seller must know the buyer is relying on the seller's skill or judgment to furnish the goods. Dan Stern Homes, 2009 WL 1910955, at *3 (citing Alumax Aluminum Corp., Magnolia Div. v. Armstrong Ceiling Sys., Inc., 744 S.W.2d 907, 910 (Tenn. Ct. App. 1987)). In short, the issue is "whether the product was fit for the particular purpose for which it was bought." Allen v. Am. Med. Sys., Inc., No. 24, 1989 Tenn. App. LEXIS 637, at *29 (Tenn. Ct. App. Sept. 15, 1989).

Akzo Nobel's proposed Amended Third-Party Complaint contains factual allegations addressing BASF's alleged breach of the implied warranty of fitness that the Court must assume to be true. Specifically, Akzo Nobel alleges that BASF was aware of Akzo Nobel's purpose in purchasing the products and of Akzo Nobel's expectation that the products would meet ordinary and reasonable standards for exterior paint when it sold those products to Akzo Nobel. (Am. Third-Party Compl. ¶ 21.) Although these allegations come close to "a formulaic recitation of the elements of a cause of action [that] will not do," Iqbal,

28

129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 555), they are sufficient considering the allegations of the proposed Amended Third-Party Complaint taken as a whole.

Most importantly, BASF has admitted "that it and/or Degussa issued certain limited warranties directly to AutoZone for products applied to certain AutoZone stores" and "that Degussa, from time to time, supplied products to [Akzo Nobel] which may have been used on certain AutoZone stores." (BASF's Answer ¶¶ 7-8.) Because of those admissions, it is reasonable to infer that BASF and Degussa were aware of Akzo Nobel's purpose in acquiring the products and that Akzo Nobel was relying on their judgment to furnish suitable products. That AutoZone required Akzo Nobel to obtain products from Degussa supports this inference. (Am. Third-Party Compl. ¶ 9.) Thus, it is plausible to conclude that Akzo Nobel's transactions with Degussa and BASF gave rise to an implied warranty of fitness for a particular purpose. <u>See</u> Tenn. Code Ann. § 47-2-315; <u>Dan Stern Homes</u>, 2009 WL 1910955, at *3. It is also plausible to conclude that paint cracking, peeling, and fading soon after being applied to exterior walls did not meet the particular purpose. (<u>See</u> Am. Third-Party Compl. ¶¶ 12, 16.) Therefore, Akzo Nobel states a plausible claim for breach of the implied warranty of fitness.

Akzo Nobel's amendment of its claim for breach of the implied warranty of fitness would not be futile. Akzo Nobel's

Motion to Amend that claim is GRANTED.  BASF's Motion to Dismiss the original Third-Party Complaint's breach of implied warranty of fitness claim is DENIED AS MOOT.

### F.  Negligence Claim

Under the economic loss doctrine, "[i]n a contract for the sale of goods where the only damages alleged come under the heading of economic losses, the rights and obligations of the buyer and seller are governed exclusively by the contract." Trinity Indus., Inc. v. McKinnon Bridge Co., 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001).  There are two forms of economic losses: (1) direct economic losses and (2) consequential economic losses attributable to the product.  McLean v. Bourget's Bike Works, Inc., No. M2003-01944-COA-R3-CV, 2005 WL 2493479, at *6 (Tenn. Ct. App. Oct. 7, 2005).  "Direct economic losses relate to the product itself and include costs of repairing or replacing the product or the diminution in the product's value because it is of an inferior quality or does not work for the general purposes for which it was manufactured and sold."  Id. (citations omitted).  "Consequential economic losses include all other economic losses attributable to the product itself such as the loss of profits resulting from an inability to use the defective product."  Id. (citations omitted).  The economic loss rule requires purchasers suffering purely economic losses to seek a remedy in contract, not in tort.  Id. at *5 (citations omitted).

Although the Supreme Court of Tennessee has never expressly adopted the economic loss doctrine, it has expressed agreement with the policies underlying it and noted with approval cases in which the Tennessee Court of Appeals has applied it. Lincoln Gen. Ins. Co. v. Detroit Diesel Corp., 293 S.W.3d 487, 488, 489 n.3 (Tenn. 2009) (citations omitted). The Supreme Court of Tennessee has refused to recognize exceptions to the economic loss doctrine, presupposing its existence. Id. at 493 ("We therefore hold that Tennessee does not recognize an exception to the economic loss doctrine under which recovery in tort is possible for damage to the defective product itself when the defect renders the product unreasonably dangerous and causes the damage by means of a sudden, calamitous event."); Ritter v. Custom Chemicides, Inc., 912 S.W.2d 128, 133 (Tenn. 1995) ("Tennessee has joined those jurisdictions which hold that product liability claims resulting in pure economic loss can be better resolved on theories other than negligence. . . . In Tennessee, the consumer does not have an action in tort for economic damages under strict liability.") (citations omitted).

Because the Court is adjudicating a matter of state law in a diversity suit, it is, "in effect, only another court of the State" and is bound by decisions that would be binding on a Tennessee court. King v. Order of United Commercial Travelers of Am., 333 U.S. 153, 161 (1948) (quoting Guar. Trust Co. of

N.Y. v. York, 326 U.S. 99, 108 (1945)).  The Court is thus bound to apply the economic loss rule in this case.

Here, Akzo Nobel alleges that BASF, the party from which it purchased the allegedly deficient products, is liable to Akzo Nobel for negligently manufacturing, designing, formulating, and testing products that failed.  (Am. Third-Party Compl. ¶ 27.) That allegation is doubly deficient.  First, Akzo Nobel does not offer any facts to support it, thus failing to satisfy the pleading standard in Iqbal.  Second, the measure of "damages" for which Akzo Nobel seeks recovery is essentially any liability it might incur from AutoZone's breach of contract suit.  (See Am. Third-Party Compl. ¶ 28.)  AutoZone is seeking "compensatory damages in an amount sufficient to compensate AutoZone for the costs incurred due to [Akzo Nobel's] breach of the contract, including, without limitation, the cost of curing the warranty defects currently known and those reasonably certain to be incurred by AutoZone in the future."  (AutoZone's Compl. at 7.) Thus, Akzo Nobel seeks to recover in tort for purely economic losses allegedly resulting from breach of contract.

In this case, the economic loss rule is squarely on point, barring Akzo Nobel's negligence claim.  See Trinity Indus., Inc., 77 S.W.3d at 171.  When a party attempts to use tort law to recover the cost of replacing a defective product sold to it for use in its business, "[t]his cost is called in law an

'economic loss,' to distinguish it from an injury to the plaintiff's person or property (property other than the product itself) . . . . We have a body of law designed for such disputes. It is called contract law." <u>Miller v. U.S. Steel Corp.</u>, 902 F.2d 573, 574 (7th Cir. 1990).

Because Tennessee law bars negligence claims like Akzo Nobel's, Akzo Nobel's amendment of its negligence claim would be futile. Based on the same reasoning, the negligence claim in its original Third-Party Complaint must fail. (<u>See</u> Answer to Plaintiff's Amended Complaint, Counterclaim, and Third-Party Complaint, D.E. 47.) Therefore, Akzo Nobel's Motion to Amend its negligence claim is DENIED. BASF's Motion to Dismiss the negligence claim in Akzo Nobel's original Third-Party Complaint is GRANTED.

## V. Conclusion

For the above reasons, BASF's Motion to Dismiss is GRANTED in part and DENIED in part, and Akzo Nobel's Motion to Amend is GRANTED in part and DENIED in part.

So ordered this 10th day of September, 2010.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE